IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TIMOTHY SUNKE,

                                                OPINION AND ORDER

        Plaintiff,

                                                    17-cv-866-bbc

    v.

DONALD STONEFELD and CANDACE WHITMAN,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Timothy Sunke is proceeding on a claim in this case that defendants Dr. Donald Stonefeld and Candace Whitman discontinued his medication for attention deficit hyperactivity disorder, in violation of his rights under the Eighth Amendment. (I have revised the caption to reflect the correct spelling of defendants' names.) Before the court are defendants' motion for summary judgment, dkt. #20, and plaintiff's motion to strike that motion on the ground that defendants filed their motion after the deadline for doing so, dkt. #34. For the reasons explained below, I am denying plaintiff's motion to strike, granting defendants' motion for summary judgment and closing this case.

      From defendants' proposed findings of fact, I find the following facts to be undisputed unless otherwise noted. (Plaintiff did not file any proposed findings of fact of his own.)

UNDISPUTED FACTS

A. The Parties

At all times relevant to this case, plaintiff Timothy Sunke was an inmate at the Fox Lake Correctional Institution, where defendant Donald Stonefeld was employed as a psychiatrist and defendant Candace Whitman was the health services unit manager.

Plaintiff suffers from Attention Deficit Hyperactivity Disorder (ADHD). As a psychiatrist, Dr. Stonefeld did not provide direct psychological consultation to plaintiff. Rather, psychologists and psychological unit staff work directly with patients and consult Stonefeld if they think that medication would complement the counseling therapy offered to the patient. (Plaintiff says that he met with Stonefeld on numerous occasions to discuss medications.) Stonefeld generally relies on a patient's psychological records in determining whether to prescribe psychotropic medications.

Whitman is a licensed registered nurse and is not licensed to prescribe or discontinue medication or provide direct mental health services or psychological care to inmates. Only advanced care providers (including nurse practitioners) and physicians prescribe medications, with psychiatrists in particular being licensed to prescribe medications for psychological conditions. As the health services unit manager, Whitman does not provide direct care to patients and never provided medical care to plaintiff. Rather, she generally oversees and manages the administration of health care provided at the institution, has access to patient medical records, responds to inmate requests for health care on occasion, works with primary care providers and monitors nursing practices and documentation.

### B. Department Policy Regarding ADHD Treatment

ADHD is a brain disorder marked by an ongoing pattern of inattention and hyperactivity-impulsivity that interferes with functioning or development. Inattention means a person wanders off task, lacks persistence, has difficulty sustaining focus and is disorganized. Hyperactivity means a person seems to move about constantly or excessively fidgets or talks. In adults, hyperactivity may include extreme restlessness or wearing others out with constant activity. Impulsivity means a person makes hasty actions that occur in the moment without first thinking about them and that may have high potential for harm.

Because ADHD may affect an individual's ability to perform regular daily tasks, treatments such as medication, psychotherapy, education, therapy or some combination of these measures are used to increase function. Adderall is a stimulant that is used to treat ADHD, but it poses risks of abuse and side effects, especially with misuse. Therefore, other interventions like coaching to improve time management and task organization skills are often used to treat ADHD. According to defendant Stonefeld, medications are not medically necessary to treat ADHD.

The Department of Corrections has strict guidelines for providing controlled medication in prison and instructs health care providers on how to manage medication misuse. Controlled substances are regulated by the Drug Enforcement Administration and pose a greater risk of misuse than non-controlled substances. Pursuant to Department of Adult Institution Policy 500.80.26—Medication Non-Adherence and Misuse, Procedure Section IV, when an inmate misuses a controlled medication, he receives a conduct report

3

and his advanced care provider is notified. The provider then determines if a medication change is necessary. In all but the most exceptional circumstances, the provider will discontinue the medication or find alternatives that have less potential for misuse.

As a result of the potential for misuse, stimulants are not commonly prescribed in prison. According to Dr. Jeffrey Anders, the Psychiatry Director for the Wisconsin Department of Corrections, it is department policy to prescribe medications used to treat ADHD in very limited circumstances. Typically, medications are prescribed only when the inmate is in school, working or participating in another intensive program and a teacher, work supervisor or program supervisor provides information that suggests that the inmate has a functional impairment. A functional impairment is significant behavioral dyscontrol or difficulty planning and sequencing purposeful activities. Therefore, according to Anders, psychiatrists only prescribe stimulants to treat ADHD symptoms after a review of the inmate's background, daily functioning and need of treatment to participate in work or school. (Plaintiff attempts to dispute the existence or enforcement of such a policy by pointing out that he began taking stimulants in 2012 but was not in school or working until 2015.)

### C. Plaintiff Misuses Medication

During the course of his incarceration, plaintiff has received both psychological and psychiatric services for various mood, anxiety and ADHD complaints. In 2012, psychological services staff evaluated plaintiff for possible ADHD. At that time, plaintiff was

4

prescribed Bupropion (or Wellbutrin), which is used to treat both depression and ADHD. As of May 2017, plaintiff was taking Adderall and Bupropion for his ADHD.

On May 19, 2017, plaintiff received a conduct report for misusing Bupropion and disobeying orders. He hid the pill under his tongue and was observed swallowing it later. Plaintiff admits that he abused his medication. He also has been found guilty of medication abuse or misuse on at least three other occasions: (1) on June 14, 2009, he pled guilty to giving another inmate one of his prescribed anti-depressants in exchange for dessert; (2) on January 26, 2010, he was found guilty of giving his prescription medication to another inmate; and (3) on September 9, 2013, he was found guilty of "cheeking" his Adderall and selling it to other inmates for $3 per pill. (Plaintiff points out that he had been prescribed a stimulant despite these previous three incidents.)

In direct response to the May 2017 incident, Stonefeld discontinued plaintiff's Adderall and Bupropion. At that time, plaintiff was not in school and did not have a job. He was placed in restrictive housing and was scheduled to return to general population by June 21, 2017. Plaintiff was scheduled to return to school by July 3, 2017.

### D. Plaintiff's Alternative Treatment for ADHD

Between May 19, 2017 and March 9, 2018, plaintiff saw psychological services staff at least 18 times. Based on Stonefeld's professional clinical judgment and expertise, none of the symptoms plaintiff reported during that period required the provision of an addictive stimulant to plaintiff.

5

Less than one week following the discontinuation of plaintiff's medications in May 2017, Stonefeld restarted the Bupropion in response to plaintiff's report of difficulty focusing. On May 30, 2017, Stonefeld reduced the dosage because plaintiff reported depression. Plaintiff later refused Bupropion, so Stonefeld discontinued it.

On June 13, 2017, plaintiff reported that he wanted to restart his ADHD medication because it kept him from being impulsive and helped him communicate more effectively. In July 2017, he expressed a desire to take Bupropion and took it in July and August 2017. However, plaintiff refused that medication again by September 4, 2017, so Stonefeld discontinued again.

As of an August 11, 2017 care team meeting, plaintiff showed an interest in returning to school and asked that his ADHD medication be restarted in a crushed form. (Care team meetings are held on a case by case basis in an effort to discuss and handle inmates with more complex needs that require a multidisciplinary approach.) However, federal regulations prohibit the crushing of stimulants. Although plaintiff also asked to be started on Vyvanase and extended release Adderall, which can be sprinkled on food, both medications are stimulants that have a high potential for abuse and dependence. Because of plaintiff's history of medication hoarding and abuse, he was not approved to restart Adderall. Further, it was Whitman's understanding that Stonefeld did not believe that Adderall was medically necessary in light of other options available.

During an August 11, 2017 visit with psychological services, plaintiff was provided with non-medication support to manage his concentration and attention concerns, including

6

active listening skills. Plaintiff reported emotional stability, and his providers noted that he was both cognitively and emotionally able to make rational decisions. Plaintiff was given a list of general educational recommendations in case he struggled with concentration in the future.

During his September 7, 2017 visit with psychological services, plaintiff was provided with active listening, counseling and instruction on concentration and learning skills. He was also given printed materials on anxiety and concentration. During his September 29, 2017 visit with psychological services, he was provided with active listening, brief supportive counseling, re-teaching of compensatory skills for concentration and learning and reinforcement of emotional coping skills. He was given additional printed materials on managing ADHD without medication.

Plaintiff filed his lawsuit in this court on November 14, 2017, alleging that the alternative therapies offered at the prison were not effective at managing his ADHD. However, two weeks later, during a December 5, 2017 care team meeting, it was reported that plaintiff was doing well in school. Also during the care team meeting, Whitman noted that plaintiff wrote to several staff members in an effort to obtain stimulant medications but was continuing to refuse Bupropion in crushed form. At a psychological services unit visit on the same day, plaintiff was provided with active listening and an outlet to discuss his outstanding concerns and needs related to his health and case management. Subsequently, he was scheduled to attend individual consultations with the psychiatrist for six months to work on coping skills and adhere to the treatment plan provided.

Dr. Anders's review of plaintiff's records showed that plaintiff did not have any injury or conditions significantly impacting his functioning. Whitman's only involvement in plaintiff's treatment is limited to her participation in plaintiff's care team meetings and responding to his January 18, 2017, July 17, 2017, September 17, 2017 and September 28, 2017 health service requests regarding plaintiff's requests to change psychiatrists, complaints about ADHD symptoms and complaint about his medical record not having all of his health service requests. (Plaintiff says that Stonefeld and other psychiatrists needed Whitman's approval to prescribe plaintiff medication, but the only evidence he cites in support of this view is a January 3, 2018 discussion he had with a Dr. Waterman who allegedly informed plaintiff that Whitman refused to allow plaintiff to be placed back on a crushed version of Bupropion.)

OPINION

A. <u>Motion to Strike</u>

Plaintiff asks that the court disregard defendants' motion for summary judgment because it was filed on December 3, 2018, three days after the November 30, 2018 deadline for filing dispositive motions. However, contrary to plaintiff's assertion, defendants filed their motion electronically on November 30 and mailed a copy of it to plaintiff the same day. Although plaintiff may not have received his copy of the motion until December 3, it was timely filed by the deadline set by the court. Accordingly, plaintiff's motion to strike defendants' motion for summary judgment will be denied.

B.  Eighth Amendment Claim

Plaintiff alleges that defendants Stonefeld and Whitman acted with deliberate indifference to his serious medical need by discontinuing and not restarting the Adderall he needs for treatment of ADHD. A prison official may violate the Eighth Amendment if the official is "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006). The condition does not have to be life threatening. Id. A medical need may be serious if it "significantly affects an individual's daily activities," Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997), if it causes significant pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994). "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable measures. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996).

Under this standard, plaintiff's claim has three elements: (1) did plaintiff have a serious medical need requiring medical treatment?; (2) did defendants know that plaintiff needed treatment?; and (3) despite their awareness of the need, did defendants consciously

9

fail to take reasonable measures to provide the necessary treatment? Plaintiff has failed to present sufficient evidence to satisfy any of these requirements.

Along with his affidavit, plaintiff submitted a copy of a 2012 psychological services report in which a prison psychologist diagnosed him with ADHD and noted that he had several deficiencies in various functional areas. Dkt. #33. It is undisputed that plaintiff received medication for his ADHD between 2012 and 2017. Plaintiff also says that his untreated ADHD exacerbates his other emotional and psychological problems, including suicidal ideation. Although I agree with plaintiff that a reasonable jury may be able to conclude that plaintiff suffers from a serious medical condition, he has failed to present any evidence other than his own conclusory opinion to show that his ADHD specifically required treatment with Adderall after May 19, 2017.

Both defendant Stonefeld and Dr. Anders have stated the medical opinion that Adderall was not medically necessary for plaintiff's ADHD and that his symptoms could be and were treated effectively with alternative measures, including instructions on active listening, counseling and building concentration, learning and emotional coping skills. In addition, it is undisputed that stimulants are not commonly prescribed in prison and that it is Department of Corrections's policy for psychiatrists to prescribe stimulants only when the inmate is in school, working or participating in another intensive program *and* when a teacher, work supervisor or program supervisor provides information that suggests that the inmate has a functional impairment. Plaintiff was not working or in school in May 2017. Although he returned to school after August 2017, he was reportedly doing well in December

2017, even without any medication. Moreover, both Dr. Anders and Dr. Stonefeld concluded that plaintiff's condition was not significantly affecting his functioning during the relevant period.

Plaintiff's argument that he previously had been prescribed Adderall in 2012 when he was not in school or working is not helpful to his claim against defendants. It is undisputed that psychiatrists prescribe stimulants to treat ADHD symptoms only after reviewing an inmate's background, daily functioning and treatment needs. Plaintiff has not shown that he was experiencing the same or similar problems with daily functioning in 2017 as he had been when first diagnosed in 2012.

Finally, a reasonable jury would not conclude that either defendant consciously failed to take reasonable measures to provide plaintiff with necessary or effective treatment for his ADHD. As an initial matter, it is undisputed that Stonefeld discontinued plaintiff's medications on May 19, 2017 for a valid medical reason. Plaintiff had abused Bupropion by not taking it at the correct time. Although plaintiff argues that he was prescribed Adderall after previously hoarding, selling or abusing his medications in 2009, 2010 and 2013, there is no evidence in the record showing how or why plaintiff's physicians made the decision to continue or restart plaintiff's medication in the past. Therefore, it is impossible to draw any conclusions from the past situations that would shed light on the May 2017 incident.

Second, the undisputed facts show that plaintiff was seen regularly after May 2017 and offered various forms of alternative treatment—including Bupropion (which plaintiff

refused), counseling and coping skills training—all of which Stonefeld and Anders considered medically appropriate for plaintiff's specific symptoms. Although I understand that plaintiff believes that Adderall or another stimulant is the best treatment for his ADHD, particularly if it is offered to him in a crushed form, inmates do not have a constitutional right to choose their treatment. Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996). Without any evidence other than his own opinion to contradict the opinions of Dr. Stonefeld or Dr. Anders, plaintiff cannot show that Stonefeld's decision to discontinue plaintiff's Adderrall and provide him with alternative treatments was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." Arnett v. Webster, 658 F.3d 742, 751 (7th Cir. 2011).

Plaintiff also has failed to present any evidence showing that defendant Whitman acted with deliberate indifference to his need for ADHD treatment. Whitman did not provide any direct care to plaintiff and appropriately deferred to the recommendations of his treating psychologists and psychiatrists. Rice ex rel. Rice v. Correctional Medical Services, 675 F.3d 650, 686 (7th Cir. 2012) (nurses entitled to rely on judgment of physicians responsible for making decisions related to inmate's treatment for schizophrenia); Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009) ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."). Although plaintiff alleges that a different doctor told him that he had to check with Whitman before prescribing a psychotropic drug, the undisputed facts show that this was not general practice and that as a nurse, Whitman did not have any authority to prescribe or discontinue medications.

12

Further, even if a jury could reasonably conclude that Whitman gave an opinion about plaintiff's ADHD medications to Dr. Stonefeld or during plaintiff's care team meetings, it is undisputed that she could not dictate or override Stonefeld's or any other physician's medical decisions. Without any evidence suggesting that Whitman had reason to believe that plaintiff was receiving inadequate care for his ADHD, plaintiff cannot show that she acted with deliberate indifference.

Accordingly, defendants Stonefeld and Whitman are entitled to summary judgment with respect to plaintiff's Eighth Amendment claims against them.

ORDER

IT IS ORDERED that

1. Plaintiff Timothy Sunke's motion to strike defendants' motion for summary judgment, dkt. #34, is DENIED.

2. The motion for summary judgment filed by defendants Donald Stonefeld and Candace Whitman, dkt. #20, is GRANTED.

3. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 1st day of April, 2019.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge